**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **CYNTHIA RAMOS, Individually and on behalf of All Other Similarly Situated,** | § § § § | |
| ***Plaintiff,*** | § § | |
| **v.** | § § | **Civil Action No. 1:25-cv-1594** |
| **MEIXSELL THOMPSON LLC d/b/a BARRELS AND AMPS, and DINA MEIXSELL,** | § § § § | |
| ***Defendants.*** | § § | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY
DISCOVERY REGARDING SIMILARLY SITUATED EMPLOYEES**

Defendants Meixsell Thompson LLC, d/b/a Barrels and Amps ("B&A"), and Dina Meixsell ("Meixsell") (collectively "Defendants"), file this Defendants' Response to Plaintiffs' Motion for Preliminary Discovery Regarding Similarly Situated Employees. Plaintiff Cynthia Ramos ("Ramos"), Plaintiff Joseph Razer, and Plaintiff Robert Braunschweiger, (together, "Plaintiffs"), bring this Motion requesting that discovery be obtained on all tipped employees working for Defendants over a two (2)-year plus period, merely because they may also have a cause of action against Defendants. However, the claims made by Ramos, and the other Plaintiffs, cannot be answered collectively as they are completely dissimilar from one another, as each individual Plaintiff received different treatment, separate notices, and the time periods the alleged events occurred were completely different. A more detailed legal and factual explanation is provided below.

## LATEST LAW ON THE IMPACT OF *SWALES*

Defendants do not dispute the legal precedent in *Swales*, but it is important to understand how it is to be applied. These issues were discussed in detail most recently in *Cervenka v. Jumpp Logistics, LLC*, No. 4:21-CV-813-SDJ, 2026 WL 373080, at *2 (E.D. Tex. Feb.10, 2026), which stated as follows:

> District courts must determine whether putative plaintiffs are similarly situated "at the outset of litigation, *before* notice is sent to potential opt-ins." *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 433 (5th Cir. 2021). "Only then can the district court determine whether the requested opt-in notice will go to those who are actually similar to the named plaintiffs." *Id.* at 434. The Supreme Court and Fifth Circuit have cautioned district courts not to "stir up litigation" by authorizing notice to "those who cannot ultimately participate in the collective" action. *Id.* at 441 (cleaned up). Instead, "the district court's job is ensuring that notice goes out to those who are 'similarly situated,' in a way that scrupulously avoids endorsing the merits of the case." *Id.* at 440.

> In determining whether putative plaintiffs are similarly situated, the relevant inquiry is "whether merits questions can be answered collectively." *Id.* at 442. Courts in the Fifth Circuit typically consider three factors (the "*Lusardi* factors") to make this determination: (1) the disparate factual and employment settings of the proposed plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each proposed plaintiff; and (3) fairness and procedural considerations. *See Fuller v. Jumpstar Enters., LLC*, No. CV H-20-1027, 2021 WL 5771935, at *3 (S.D. Tex. Dec. 6, 2021) (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987)); *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 336–37 (5th Cir. 2023) ("While *Swales* rejected *Lusardi*'s two-step method of 'conditional certification' and notice followed by a motion to decertify, courts may still find it useful to consider the *Lusardi* factors to help inform or guide the similarly situated analysis[.]"). Plaintiffs have the burden of showing that the proposed collective members are similarly situated. *Fuller*, 2021 WL 5771935, at *3.

> "After considering all available evidence, the district court may conclude that the Plaintiffs and Opt-ins are too diverse a group to be 'similarly situated' for purposes of answering [merits questions], or at least that Plaintiffs have not met their burden of establishing similarity." *Swales*, 985 F.3d at 443. Put differently, the district court may conclude that answering merits questions would "require a highly individualized inquiry into each potential opt-in's circumstances" such that "the collective action would quickly devolve into a cacophony of individual actions." *Id.* at 442 (cleaned up). If that is the case, the district court—exercising its "broad, litigation-management discretion"—may decide that the case cannot proceed on a collective basis. *Id.* at 443.

## THE ALLEGATIONS AND DIFFERENCES

### A.     Claimed Lack of Notice

Plaintiffs initial claim is that they did not receive adequate FLSA-required notice that their hourly wages would be offset by their retained tips, (which will be in dispute for each Plaintiff). Under the FLSA, an employer seeking to claim a tip credit must provide notice to employees, but the notice requirement does not mandate a detailed explanation of the tip credit; rather, the employer must inform employees that it intends to treat tips as satisfying part of its minimum wage obligation (*Cortez v. Casa do Brasil, LLC*, 646 F.Supp.3d 847 (2022))[1], (*Gustavus v. Cazos, Inc.*, 774 F.Supp.2d 856 (2011))[2]. This requirement is derived from Section 3(m) of the FLSA, codified at 29 U.S.C. § 203(m). The courts have consistently held that the employer's obligation is to ensure employees are aware of the employer's intent to use tips to meet the minimum wage requirement, rather than providing an exhaustive explanation of the tip credit mechanism (*Gustavus v. Cazos*, *Inc*., 774 F.Supp.2d 856 (2011))[2]. There is no requirement that this notice be made in writing.

It is Defendants' position that Meixsell, B&As owner,  talked to each employee separately and informed each employee of B&A's tip credit policy, informing all Plaintiffs in this matter that it intended to use tips to satisfy part of its minimum wage obligation, and explaining how tips were paid by B&A.  Other managers provided notice as well.  Some additional written information on the tip issue was also provided, and there were numerous discussions related to the tip pool and eligibility for same.

Plaintiffs claim they did not receive adequate notice.  This will require an individual determination on what each employee was told, or provided, that would have put them on notice that they would be paid tips to satisfy part of the minimum wage obligation. This obviously does

not lend itself to each individual being similarly situated, as every employee would have a different experience related to this notice issue. In addition, it is expected that Plaintiffs, when under oath, will admit to being put on notice of the tip structure and how it applied to their wages.

As a result, the "Notice" argument does not lend itself to bringing a collective action, and discovery should not include all tipped employees that worked by Defendants.

**B.**     **Claimed Failure to Allow Plaintiffs to Keep Tips**

The next issue is Plaintiffs' claim that the tips were improperly deducted, which would invalidate the tip pool. First, a review of every paycheck for all Plaintiffs *will not reveal any illegal deductions from any of Plaintiffs' paychecks.* Rather, Plaintiffs claim that they potentially had to pay monies back to B&A if they failed to obtain a credit card from a patron and the patron walked the tab. Defendants rarely requested pay back of walked bills, and Defendants highly dispute whether the Plaintiffs in this matter were ever required to pay back monies from walked patrons. Again, there is also no evidence that any such monies—if requested from Plaintiffs—were ever taken out of any tips, or any of Plaintiffs' wages.

The main problem with Plaintiffs' argument on this point is that *the FLSA does not prohibit requesting monies be paid back, even if it occurred.* Under 29 U.S.C. § 203(m), an employer may take a tip credit against its minimum wage obligations only if "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips" (29 U.S.C.A. § 203)[1]. *No deductions from tips were ever made;* thus, this provision of the FLSA would not apply. The statute requires that tips be retained by employees, but it does not prohibit requests to pay monies back for not complying with credit card policies.[1]

---

[1]   This issue will be addressed in more detail in Defendants' Motion for Summary Judgment.

Not only do the payback policies fail to validate the FLSA, but ***the limited nature of these events does not allow Plaintiffs to bring a class action suit regarding these matters***, as a minor FLSA tip credit violation affecting a few employees does not automatically invalidate the tip credit for all employees, for all weeks worked. The scope of liability is generally limited to the specific employee affected and the particular time period when the violation occurred.  For instance, in *Steele v. Leasing Enters., Ltd.*, the Fifth Circuit held that failure to comply with tip credit requirements results in an employer being "divested of its statutory tip credit" for "that individual employee, who is then entitled to the full unpaid minimum wage or overtime compensation *during the period of the violation.*"  *Steele v. Leasing Enterprises, Limited*, 826 F.3d 237, 246 (5th Cir. 2016) (*emphasis added*). This language confirms that the loss of tip credit applies to the specific affected employee rather than the entire workforce.  In addition, in *Paschal v. Perry's Restaurants Ltd.*, 2025 WL 3215363 (W.D. Tex (Austin) 2025), the court limited relief to "any workweek in which [the company's] weekly tip pool was unlawful, [the company] is divested of the tip credit for that week, and Plaintiffs are entitled to recover damages on a weekly basis." *Id.* at *15. Similarly, in *Black v. DMNO, LLC*, 2018 WL 2306939 (E.D. Louisiana 2018), the court found that "when a violation of § 203(m) is infrequent, the defendants' liability is limited to those instances in which the FLSA violation occurred" *Id*. at *4.  The court noted that while no controlling Fifth Circuit case law directly addressed sporadic violations, "several cases discussing the effect of a sporadic FLSA violation suggest" this limited approach. *Id.*

Thus, even if the law found a sporadic violation, it would only apply for certain time periods and only to those individuals affected. As a result, none of the Plaintiffs are similarly situated, much less any other persons Plaintiffs may seek to bring into this case.

C.    **Claimed Manager Keeping Tips**

Plaintiffs claim that on occasion a manager would take tips from tipped employees like waiters and bartenders, but these facts are not accurate, and any events would be sporadic at best. First, *Managers did not keep tips*. B&A is a small bar with very few employees, and sometimes a person would be tasked with the bartender job for a one-time period, and sometimes this same person will be asked to be a manager during a different time period. While managing the bartender receives a wage and no tips. While bartending the person no longer gets the higher wage but participates in the tip pool. On all occasions, this person clocks in and out of each position. This does not invalidate the tip pool under the FLSA.  Even if it was a limited violation, it would be a sporadic violation that would not apply to all tipped employees, during all shifts, for all time.   As a result, even if Plaintiffs can prove a sporadic violation, the legal analysis discussed in the section above would apply, and any damages would be extremely limited to those persons on the same shifts when the violation occurred.

## CONCLUSION

It is Defendants' position that the Plaintiffs are not similarly situated, and—most likely— all of these cases should have been brought separately. Plaintiffs were all provided verbal and written notice of the tip rules separately from the owner (and others); thus, Plaintiffs were not similarly situated related to notice.  Plaintiffs also cannot obtain class notice say that their tips were reduced to pay back monies to B&A from walkouts, or that a manager took tips while being a manager, because even if Plaintiffs could identify a sporadic event warranting a violation, that did not invalidate using tips to offset minimum wage for *all* employees for *all* weeks worked.  To the extent Plaintiffs can claim a violation, it would be sporadic and each employee would be affected differently based on shift and time period when the event allegedly occurred. This is not conducive

to allowing for a class-action lawsuit under the FLSA, or any other statute. As a result, discovery should be limited to the three (3) Plaintiffs that are part of this lawsuit.

Respectfully submitted,

*/s/ Robert "Bobby" Lee*
**Robert (Bobby) Lee**
State Bar No. 00787888
lee@clousebrown.com

**CLOUSE BROWN PLLC**
4245 North Central Expressway, Ste. 350
Dallas, TX 75205
Telephone: (214) 698-5100
Facsimile: (214) 481-8881

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 9th day of March, 2026 a true and correct copy of the foregoing document has been served via the Court's ECF system on counsel of record, as follows:

Aaron Johnson
**FAIR LABOR LAW**
ajohnson@fairlawborlaw.com
314 E. Highland Mall Blvd., Ste. 401
Austin, TX 78752
(512) 277-3505 – Main
(512) 664-0845 – Direct

**ATTORNEY FOR PLAINTIFFS**

*/s/ Robert "Bobby" Lee*
**Robert (Bobby) Lee**